## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

IN RE:

TURNER HERITAGE HOMES, INC.,

        Debtor.

_____/

Case No. 11-40517-LMK

Chapter 11 Case

### DEBTOR'S MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF LOT 9 TUSCAN HILL DRIVE, TALLAHASSEE, LEON COUNTY, FLORIDA, 32312 FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363 AND REQUEST FOR HEARING ON OCTOBER 20, 2011

Turner Heritage Homes, Inc. ("Turner" or the "Debtor") d/b/a T & D Enterprises, by and through undersigned counsel, pursuant to 11 U.S.C. §§ 105(a), 363(b) and (f), and Bankruptcy Rules 6004, 2002 and 9006, files this motion (the "Motion") seeking an order authorizing and approving the sale of Debtor's right, title, and interest in that certain parcel of real property located at Lot 9, Tuscan Hill Drive, Tallahassee, Leon County, Florida 32312 (the "Property"), free and clear of liens, claims, interests and encumbrances, if any, pursuant to 11 U.S.C. § 363, with the same to attach solely to the proceeds of the sale. In support thereof, the Debtor states:

### BACKGROUND

1.      On June 29, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor operates as a builder and developer of "for sale" residential and commercial property, as well as merchant builder/owner and lessor of residential and commercial property. The Debtor's operations have historically been centered in the

Tallahassee, Florida and Emerald Coast markets.  The Debtor owns several parcels of developed and income producing property, including residential income producing property and commercial rental property located in Tallahassee, Florida.

4.     On July 5, 2011, the Debtor filed its Disclosure Statement (D.E. 21) and Chapter 11 Plan of Reorganization (D.E. 22).   A hearing is scheduled on the Disclosure Statement for October 4, 2011 at 9:00 a.m. EST.

5.     The Property that is the subject of this Motion is encumbered by the perfected mortgage of First Tennessee Bank an outstanding principal balance of at least $110,000 plus applicable interest, fees, and costs by virtue of that certain  mortgage from T&D Enteprises, LLC to Capital City Bank recorded in the Official Records Book 3297, Page 1422, Assignment recorded in Official Records Book 3297, Page 1430, Notice Recorded in Official Records Book 3348, Page 1107, Modification recorded in Official Records Book 3835, Page 1476, Assignment recorded in Official Records Book 3994, Page 1824, of the Public Records of Leon County, Florida.

6.     The Property appears to also be encumbered by the recorded judgment liens of Lee M. Nunn, arising from Case No. 2008-CA-4224 (judgment in Official Records Book 4249, Page 78); Gulf State Community Bank under Case no. 10-00213-CA (judgment in Official Records Book 1474, Page 1357); Peoples National Bank under Case no. 08-CA-1855 (judgment in Official Records Book 4169, Page 2185); and Beach Community Bank under Case no. 2008-CA-4067 (judgment in Official Records Book 4005, Page 3).

7.     The legal description of the Property is:

LOT 9
Commence at the Northwest corner of the Southeast Quarter of Section 29, Township 2 North, Range 1 East, Leon County, Florida, thence run East 1056 feet along the North line of the Southeast Quarter, thence ,un North 1 4 0 feet, thence run East 264 feet to on iron pipe, thence South 00 degrees 57 minutes 21 seconds East for a distance of 329.60 feet, thence South 29 degrees 02 minutes 39 seconds West for a distance of 203.84 feet, thence South 60 degrees 57 minutes 21 seconds East for a distance of 157.76 feet to a point on a curve to the left, thence run Southeasterly along said curve having a radius of 499.99 feet, through a central angle of 20 degrees 36 minutes 03 seconds for an arc distance of 179.77 (chord of said arc bears South 71 degrees 15 minutes 22 seconds East 178.80 feet), thence run South 81 degrees 33 minutes 23 seconds East a distance of

423.18 feet to a point on a curve concave to the North, thence run Southeasterly along said curve having a radius of 400.00 feet, through a central angle of 22 degrees 26 minutes 18 seconds for an arc length of 156.65 feet (chord of said arc bears North 87 degrees 13 minutes 28 seconds East 155.65 feet), thence North 76 degrees 00 minutes 19 seconds East a distance of 163.90 feet to the POINT OF BEGINNING. From said POINT OF BEGINNING run North 76 degrees 00 minutes 19 seconds east a distance of 120.43 feet, to a point on a curve concave Southerly, thence run easterly along said curve having a radius of 500.00 feet, through a central angle of 13 degrees 40 minutes 38 seconds for an arc distance of 119.36 feet (chord of said arc bears North 82 degrees 50 minutes 38 seconds East 119.07 feet), thence run North 89 degrees 40 minutes 57 seconds East a distance of 88.12 feet, thence run South 00 degrees 19 minutes 49 seconds East a distance of 530.57 feet, thence run North 89 degrees 40 minutes 13 seconds West a distance of 297.64 feet, thence run North 03 degrees 22 minutes 18 seconds West a distance of 485.24 feet, to the POINT OF BEGINNING, said lands containing 3.69 acres, more or less.

8. Short form of legal description: **29 2N 1E 3.69 A IN NE 1/4 OF SE 1/4 BEING LOT 9 OF A 9 LOT LP DB 157/349 OR 1089/1957 1230/556 3297/1413-19 3410/2312(LP).**

## **RELIEF REQUESTED**

1. By this motion, the Debtor seeks authority to sell the Property, for the purchase price of $115,000 to Christopher D. Calvert and Lisa Y. Montgomery-Calvert. From the total net proceeds, the Debtor seeks to pay First Tennessee Bank $104,341, and in exchange, First Tennessee Bank will consider its asserted unpaid deficiency balance of $48,143 plus expenses to date of $61,668 for a total due of $109,811 to be considered paid in full.

2. On May 26, 2005, T & D Enterprises, Inc. (a DBA of the Debtor), purchased the Property from Albert S. Griffin, Jr. by Warranty Deed. On November 28, 2005, T&D Enterprises, Inc., was granted a limited partition approval for the subdivision of the purchased property into 9 lots. According to the Leon County Tax Assessor, the current tax assessed value of the Property is $221,400. By virtue of a land appraisal performed on June 21, 2011 by Timberlane Appraisal Associates, Inc., the market value of the property was reconciled to be $110,000.

3. First Tennessee Bank, the mortgagee on the Property, has agreed to accept a short sale of the property, whereby the property will be sold for $115,000 and First Tennessee Bank will agree to accept $104,342 in full and complete satisfaction of its asserted unpaid deficiency

balance of $48,143 plus expense to date of $61,668 for a total due of $109,811 which would be considered paid in full.

4.      Christopher D. Calvert & Lisa Y. Montgomery-Calvert (the "Calvert's") have agreed to purchase the property on the foregoing terms.  A true and correct signed contract for the purchase is attached hereto as **Exhibit "A"**.

5.      The offer made by the Calvert's represents the Debtor's view of the highest and best offer obtainable for the sale of the Property. The waiver of First Tennessee Bank's unsecured deficiency provides significant value to the estate and its creditors. Therefore, the Debtor submits that the purchase price is fair and adequate, advantageous for the estate, and reflects the most value obtainable from the disposition of the Property.

6.      The Debtor seeks an order authorizing and approving the sale of the Debtor's right, title, and interest in the Property, free and clear of liens, claims, interests and encumbrances, if any, pursuant to 11 U.S.C. §363.

<u>**BASIS FOR RELIEF REQUESTED**</u>

7.      This Court has the statutory authority to authorize the sale of the Property free and clear of liens, claims, and encumbrances.

8.      Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts interpreting this statutory provision have held that proposed transactions should be approved under section 363(b)(1) when (a) they are supported by the sound business judgment of the debtor's management, (b) interested parties are provided with adequate and reasonable notice, (c) the sale price is fair and reasonable, and (d) the purchaser is acting in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.,* 124 B.R. 169 (D.

Del. 1991); *see also In re Parkstone Med. Info. Sys.,* 2001 WL 36189922 (Bankr. S.D. Fla. Oct. 16, 2001).

9.      Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims, encumbrances or interests if (a) such sale is permitted under non-bankruptcy law, (b) the party asserting a lien, claim or interest consents to the sale, (c) the interest is a lien and the purchase price is greater than the aggregate amount of all of the liens on the property, (d) the interest is subject to a bona fide dispute, or (3) the party asserting the claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f).

## Sound Business Justification

10.     After due reflection of the circumstances and comparison of the offer to comparable sales in the market, the Debtor has found the sale of the Property  proposed herein to be economical, efficient, and the best way to maximize the value of the Debtor's rights, title and interests in the Property. Accordingly, the Debtor, in the exercise of its sound business judgment, has determined that it is in the best interests of the estate to sell the Debtor's rights, title and interests in the Property pursuant to the terms described herein.

## Adequate Notice of the Proposed Sale

11.     The Debtor submits that interested parties have been provided with adequate notice of the proposed sale through the filing of this Motion.

## The Sale Price is Fair and Reasonable

12.     The offer from the Calvert's to purchase the Debtor's rights, title and interests in the Property is for the total purchase price of $115,000.  This sales price is supported by the

market and acceptable to First Tennessee Bank, which confirms that the proposed price is fair and reasonable.

**The Sale Was Negotiated in Good Faith**

13.     The proposed sale of the Property on the terms described herein, are the product of good faith, arms' length negotiations between the Debtor and the Calverts.  The Debtor believes that the proposed price is fair and reasonable. The Debtor will request that the Court make a finding at the hearing on this Motion that the prevailing purchaser is a "good faith purchaser[s]" as that term is contemplated by section 363(m) of the Bankruptcy Code, and that the prevailing purchaser is entitled to all the benefits of a good faith purchaser under that statute.

**Sale Free and Clear of Liens**

14.     To the extent necessary and applicable, the Debtor has obtained or reasonably believes it will obtain, by the time of the hearing on this Motion, the consent of the Debtor's secured lien lenders to sell the Debtor's rights, title and interests in the Property free and clear of any lien, claim, encumbrance or any interest therein.  *See* 11 U.S.C. § 363(f)(2).  All liens, claims, and encumbrances shall attach solely to the proceeds of the sale.

**Waiver of Stay Provisions of Rule 6004(h)**

15.     The Debtor requests that the sale of the Property be immediately effective upon entry of a written Order approving the sale and that the fourteen (14) day stay of effectiveness of such an Order provided for in Bankruptcy Rule 6004(h) be waived.

**No Prior Request**

16.     The Debtor has made no prior request for the relief requested herein to this or any other Court.

**CONCLUSION**

17.     The Debtor reasonably believes that the sale of the Debtor's rights, title and interests in the Property free and clear of liens, claims or encumbrances, and subject to higher and better offers, will benefit the Debtor's estate.

**WHEREFORE**, the Debtor respectfully requests that this Court set this Motion for an expedited hearing on August 18, 2011, and enter an Order authorizing the sale of Debtor's right, title, and interest in the Property, free and clear of liens, claims, and encumbrances, if any, pursuant to 11 U.S.C. §363.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was caused to be served on the 3rd day of October, 2011, electronically and/or first class, U.S. Mail, upon all parties on the service list attached hereto as **Exhibit "B".**

Dated: October 3, 2011.                    Respectfully submitted,

                                        BERGER SINGERMAN
                                        Attorneys for Debtor
                                        125 South Gadsden Street, Suite 300
                                        Tallahassee, FL  32301
                                        Telephone:  (850) 561-3010
                                        Facsimile:  (850) 561-3013

                                        By: _/s/_ _Brian G. Rich_____
                                            Brian G. Rich
                                            Florida Bar No. 038229
                                            brich@bergersingerman.com
                                            Michael H. Moody
                                            Florida Bar No. 66471

# EXHIBIT "A"



## TALLAHASSEE BOARD OF REALTORS®, INC.
# CONTRACT FOR SALE AND PURCHASE
### (REVISED JANUARY 2011)



**DO NOT MAKE CHANGES ON THIS CONTRACT - IF CHANGES ARE NEEDED USE A COUNTER OFFER FORM**

1   **PARTIES:** _____ T & D Enterprises _____ SELLER and

2   _____ Christopher D. Calvert and Lisa Y. Montgomery-Calvert _____ or assignees, BUYER, agree that

3   the SELLER shall sell and the BUYER shall buy the following Property upon the terms and conditions of this Contract For Sale and Purchase.

4   **1.  LEGAL DESCRIPTION OF REAL ESTATE:**

5   Lot ___9___ Block_____ Subdivision _____ Tuscan Hill _____ Unit _____

6   located in _____ Leon _____ County, Florida. ☐ Metes and Bounds legal description attached.

7   **2.  PROPERTY ADDRESS (INCLUDE ZIP CODE):**

8   _____ Lot 9 Tuscan Hill Drive, Tallahassee, Fl. 32312 _____

9   **3.  CLOSING AND POSSESSION:**

10  This Contract shall be closed, deed delivered and the purchase price paid to SELLER on or before_____ September 30, 2011 _____.

11  If no date is filled in Closing will be on or before 45 days after Contract Date, unless extended by other provisions of this Contract.

12  **POSSESSION OF THE PROPERTY WILL BE DELIVERED TO BUYER AT CLOSING** at which time SELLER will have removed all personal

13  items and trash and cleaned the Property.  If extreme weather or other local conditions out of control of the Parties make Closing

14  impossible, Closing may be extended up to 3 days after restoration of utilities and other services essential to Closing. But if Closing

15  can not happen within 14 days after Closing Date either Party may terminate this Contract by delivering written notice to the other

16  Party and BUYER will be refunded the Deposit, releasing BUYER and SELLER from all obligations under this Contract.

17  **4.  PURCHASE PRICE; METHOD OF PAYMENT:**

18  Initial Deposit in the amount of $_____ 3,000.00 to be held in trust, along with any additional Deposits by:

19  Name: _____ Smith, Thompson, Shaw and Manausa PA   - Andrea Owens _____

20  Address: _____ 3520 Thomasville Road, Tallahassee, Fl. 32308 _____

21  Phone Number: _____ 850-893-4105 _____

22  A.  Amount of initial Deposit applicable to down payment ☐ accompanies this offer ☒ to be made

23      within ___1___ days after Contract Date.............................................................. $_____ 3,000.00

24  B.  An additional Deposit in the amount of...................................................................... $_____

25      shall be due on or before the following date: _____.

26      If said sum is not timely received BUYER shall be in default.

27  C.  New third party financing (see Clause #7A) ☐ Conventional ☐ FHA ☐ VA ☐_____ $_____

28  D.  Assumption of mortgage (see Clause #7B) having an approximate principal balance of.......... $_____

29  E.  Purchase money note and mortgage from BUYER to SELLER (see Clause #7C)................... $_____

30  F.  Other:_____................................................................ $_____

31  G.  Approximate balance of down payment to close (not including BUYER'S closing expenses)........... $_____ 112,000.00

32      **MONIES DUE AT CLOSING SHALL BE PAID BY OFFICIAL BANK CHECK OR WIRE TRANSFER**

33      Deposits held in trust will be disbursed according to the terms of this Contract. Failure of clearance of Deposits

34      shall not excuse performance by BUYER. At time of Closing, Deposit in excess of down payment will be

35      applied to other costs of BUYER, or refunded if in excess of required down payment and closing expenses.

36  H.  **PURCHASE PRICE** ............................................................................................ $_____ 115,000.00

1 of 9                                   Initials: _____  _____

**5. EXPENSES:**

If SELLER has agreed to pay any of BUYER'S costs, BUYER agrees to pay advance costs and be reimbursed by SELLER at time of closing. Should Contract not close, each Party will pay for items stipulated below except the SELLER will not be responsible for any costs on behalf of BUYER.

**BUYER WILL PAY FOR THE FOLLOWING:**

| | |
|---|---|
| ☒ Owner's Title Insurance (primary issue) plus Fees | ☐ Any loan costs required by Lender |
| ☐ Mortgagee's Title Insurance (simultaneous issue) plus Endorsements | ☐ Any loan costs in excess of SELLER's contribution |
| ☐ One half of all Title Insurance Costs | ☐ Prepaid Interest, Taxes, Hazard Insurance & Homeowner Dues |
| ☐ Loan Origination Fee | |
| ☐ Loan Discount Points | ☐ Prepaid Mortgage Insurance |
| ☐ Intangible Tax on Mortgage(s) | ☒ BUYER'S  Attorney's Fees (if any) |
| ☐ Documentary Stamps on Note(s) | ☐ Home Warranty not to exceed $_____ 0.00. |
| ☒ Recording Fees | ☐ Wood Destroying Organisms Inspection(s) not to exceed $_____ |
| ☐ Credit Report | |
| ☐ Appraisal Fee(s) | ☐ Inspection Fees per Clause 12 |
| ☒ Survey | ☐ Other Fees (specify)_____ |
| ☐ Flood Certification Letter | ☐ _____ |

**SELLER WILL PAY FOR THE FOLLOWING:**

| | |
|---|---|
| ☒ Brokerage Fee | ☐ Allowable costs on behalf of BUYER not to exceed |
| ☒ Documentary Stamps on Deed | $_____ to be applied in the following order (to items checked) until funds expended: |
| ☒ Mortgage Satisfaction & Recording Fees | |
| ☐ Any Applicable Prepayment Penalty | ☐ FHA/VA Costs required of SELLER |
| ☒ SELLER'S Attorney's Fees (if any) | ☐ Prepaids |
| ☐ Wood Destroying Organisms Inspection(s) not to exceed $_____ | ☐ Discount Points |
| ☐ Wood Destroying Organisms Treatment/Repairs not to exceed | ☐ Any other costs including those BUYER has agreed to pay for in Clause #5 above |
| ☐ $_____ see Clause #11 | ☐ Repairs & Replacements required by LENDER (not including WDO treatment/repairs) not to exceed |
| ☐ Owner's Title Insurance (primary issue) plus Fees | $_____ |
| ☐ Mortgagee's Title Insurance (simultaneous issue) plus Endorsements | ☐ Other Fees (specify)_____ |
| ☐ One half of all Title Insurance Costs | ☐ _____ |
| ☐ Survey | ☐ _____ |
| ☐ Home Warranty not to exceed  $_____. | ☐ _____ |

| THE FOLLOWING TO BE ORDERED BY: | BUYER | SELLER | |
|---|---|---|---|
| **Title Insurance** | ☒ | ☐ | |
| **Survey** | ☐ | ☐ | |
| **WDO Inspection(s)** | ☐ | ☐ | from_____ |
| **Home Warranty** | ☐ | ☐ | from_____ |

**6. PERSONAL PROPERTY INCLUDED IN PURCHASE PRICE (adds no value for mortgage loan or appraisal purposes):**

All fixed equipment, fixtures, and the following non-fixed items on Property on Contract Date are included:

| | | | |
|---|---|---|---|
| ☐ Above Ground Pool | ☐ Generator | ☐ Refrigerator ☐ with Ice Maker | ☐ Water Softener/Purifier |
| ☐ Ceiling Fans–all | ☐ Ice Maker–Stand Alone | ☐ Satellite System | ☐ Window Treatments–all |
| ☐ Central Vacuum and Attachments | ☐ Intercom | ☐ Security System–owned | ☐ Window/Wall AC |
| ☐ Dishwasher | ☐ Light Fixtures – all | ☐ Spa or Hot Tub with Heater | ☐ _____ |
| ☐ Disposal | ☐ Microwave Oven | ☐ Sprinkler System | ☐ _____ |
| ☐ Dryer | ☐ Pool Equipment | ☐ Storage Shed | ☐ _____ |
| ☐ Garage Door Opener | ☐ Pool Heater | ☐ Trash Compactor | ☐ _____ |
| ☐ and Transmitter(s) | ☐ Range/Oven | ☐ Washer | ☐ _____ |

The following items are excluded from the purchase:_____

_____

2 of 9                 Initials: _____ _____

**7. FINANCING:**

A. ☐ **NEW THIRD PARTY FINANCING:**

BUYER shall have **15** days from Contract Date to secure to BUYER'S satisfaction new third party financing as stipulated in Clause #4C (plus any applicable FHA MIP, VA, or other funding fees). Once the 15 day period passes, if BUYER has not notified SELLER of BUYER'S desire to void Contract due to financing reasons, Contract will no longer be contingent on financing, with the exception that any provision in Clause #8 pertaining to appraisal shall still be applicable. At any time within the 15 days BUYER may void Contract by notifying SELLER, in writing, that BUYER can not obtain satisfactory financing. Notification will be made on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing of the Termination Form. Once the 15 day period passes if the BUYERS loan is declined the deposit will NOT be refunded for any financing reason other than those having to do with the provision in Clause 8 pertaining to appraisal. BUYER will make complete loan application no later than **5** days from Contract Date. FAILURE TO MAKE COMPLETE LOAN APPLICATION WITHIN 5 DAYS SHALL CONSTITUTE A WAIVER OF THIS FINANCING CONTINGENCY. COMPLETE LOAN APPLICATION INCLUDES FURNISHING TO THE LENDER ANY CREDIT, FINANCIAL, EMPLOYMENT, TAX RETURNS OR OTHER INFORMATION REQUESTED BY THE LENDER AND INSTRUCTING LENDER TO IMMEDIATELY ORDER AN APPRAISAL. BUYER authorizes BUYER'S lender to disclose information regarding the status and conditions of the loan application and approval to the SELLER, SELLER'S Sales Associate, and Closing agent.

B. ☐ **ASSUMPTION OF MORTGAGE:**

☐ with qualifying ☐ without qualifying....☐ adjustable interest rate ☐ fixed interest rate, in favor of _____ bearing interest at _____% per annum payable $_____ ☐ PI or ☐ PITI per month.

This Contract ☐ is ☐ is not contingent upon release of liability of SELLER from all mortgages assumed. SELLER shall furnish a status letter from each mortgagee setting forth the principal balance, escrow balance, method of payment, and the standing of each mortgage within 5 days from Contract Date. BUYER shall make application for assumption, if required by SELLER or lender, within 10 days from the date of this Contract. On assumption, BUYER will pay any mortgage charge for change of ownership and purchase escrow account. If BUYER is denied credit commitment, BUYER must notify SELLER within 2 days of denial of intent to void Contract and provide lender documentation of credit commitment denial. Notification will be made on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing of the Termination Form.

**THE SELLER IS ADVISED TO SEEK LEGAL COUNSEL CONCERNING SELLER'S LEGAL LIABILITY UPON ASSUMPTION.**

C. ☐ **SELLER FINANCING:**

Purchase money note and mortgage from BUYER to SELLER bearing interest at _____% per annum for a term of _____ years, payable $_____ PI, per _____.☐ This is a balloon mortgage with final payment of remaining principal balance to be due with _____ payment.

Purchase money mortgage and note to SELLER shall provide for the following: A) Insurance against loss by fire, with extended coverage, in an amount not less than the total amount of all mortgages or 80% of replacement value, whichever is greater. Mortgagee shall be named as loss payee; B) Acceleration, at the option of the holder, after 30 days default if a first mortgage and after 15 days default if a second mortgage; C) If a payment is received more than 15 days late, a late charge of 5% of the payment is applicable; D) The maintenance in good standing of all prior liens; E) The right of a mortgagor to prepay all or part of the principal at any time with interest to date of payment without penalty; F) Prior written consent of mortgagee to any additional advances from superior mortgage holders; G) All sums outstanding under the mortgage shall be due in full on resale of the Property.

**8. APPRAISAL: BUYER IS ADVISED TO HAVE AN APPRAISAL ON ALL TRANSACTIONS.**

A. If appraisal sets forth the appraised value of less than purchase price, BUYER will:
1. Have the option of proceeding with Closing of the Contract without regard to the amount of the appraised valuation; or
2. Within 3 days of BUYER being notified of appraised value, if BUYER and SELLER cannot come to a mutually agreeable sales price, BUYER may void Contract by notifying SELLER, in writing, on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing of the Termination Form.

B. If appraisal of the Property is insufficient to meet the terms of loan approval (other than value), within 3 days of BUYER receiving notification of the insufficiency, BUYER may void Contract by notifying SELLER, in writing, on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing of the Termination Form.

3 of 9          Initials: _____  _____
                         _____  _____

135 ☐ **FHA:**
136   It is expressly agreed that notwithstanding any other provisions of this Contract, the BUYER shall not be obligated to complete
137   the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless
138   the BUYER has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing
139   Commissioner, Veterans Administration, or a Direct Endorsement lender setting forth the appraised value of the Property not
140   less than $_____.  The BUYER shall have the privilege and option of proceeding with consummation of the
141   Contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum
142   mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of
143   the Property. The BUYER should satisfy himself/herself that the price and condition of the Property are acceptable.

144 ☐ **VA:**
145   It is expressly agreed that, notwithstanding any other provisions of this Contract, the BUYER shall not incur any penalty by forfeiture of earnest
146   money or otherwise be obligated to complete the purchase of the Property described herein, if the Contract to purchase price or costs exceeds
147   the reasonable value of the Property established by the Veterans Administration. The BUYER shall, however, have the privilege and option
148   of proceeding with the consummation of this Contract without regard to the amount of reasonable value established by the VA.

149 ☒ **CASH; SELLER FINANCING; OTHER NEW THIRD PARTY FINANCING:**
150   If cash or SELLER financing, BUYER shall select and order an appraisal by a State Licensed or State Certified Appraiser within 5 days
151   from Contract Date. If new third party financing, BUYER shall provide for appraisal as pursuant to Clause #7. BUYER shall be deemed
152   to have waived BUYER'S right under this Clause if BUYER fails to have an appraisal, or provide SELLER written notice of termination
153   of Contract due to appraised valuation being less than purchase price and provide proof of under valuation.

154 **9.  HAZARD INSURANCE; FLOOD INSURANCE; FLOOD HAZARD AREA:**
155   Within 15 days of Contract Date A) Buyer may determine that Hazard and Flood insurance (if applicable) are available to BUYER'S
156   satisfaction. B) BUYER may obtain a Flood Certification Letter to determine if the Property is in a Special Flood Hazard Area. At any time
157   within the 15 days of Contract Date BUYER may void Contract by notifying SELLER, in writing, if Buyer wishes to void the Contract for
158   any reason in this Clause. Notification will be made on the Tallahassee Board of Realtors Termination Form and BUYER will receive a
159   refund of Deposit upon signing the Termination Form.

160 **10. SURVEY: BUYER IS ADVISED TO HAVE A SURVEY ON ALL TRANSACTIONS.**
161   If survey shows an encroachment it will be treated as a title defect.

162 **11. WOOD DESTROYING ORGANISMS INSPECTION:**
163   A Wood Destroying Organism (WDO) Inspection Report certified to BUYER and SELLER, will be performed within 30 days prior to Closing
164   by a state licensed pest control firm showing all buildings on the premises except_____
165   to be visibly free of infestation and/or damage by termites, any wood destroying insects and/or wood destroying organisms
166   (sometimes referred to, but not limited to, wood rot). Fences are excluded. Decks are included unless excepted above.
167   SELLER WILL PROVIDE BUYER COPIES OF ALL WDO INSPECTIONS WITHIN 5 DAYS OF SELLER'S RECEIPT.
168   A.  If report shows infestation and/or damage, SELLER shall treat the infestation and/or repair the damage up to the amount
169       provided in Clause #5, or if none stipulated, up to 2% of purchase price; or
170   B.  If the amount required for treatment and/or repairs is in excess of amount provided in Clause #5, and SELLER agrees to remedy
171       and/or repair, BUYER agrees to complete purchase. However, if the amount required for treatment and/or repairs is in excess of
172       3% of purchase price, and even if SELLER is willing to make treatment and/or repairs, BUYER may void Contract within 5 days
173       of receipt of WDO report and repair estimate, by notifying SELLER, in writing, on the Tallahassee Board of Realtors Termination
174       Form and BUYER will receive a refund of Deposit upon signing of the Termination Form.
175   C.  If the amount required for treatment and/or repairs is in excess of the amount provided and SELLER will not remedy and/or repair,
176       BUYER will have the right to accept the Property without regard to infestation and/or damage with SELLER paying toward treatment
177       and/or repairs up to amount provided in Clause #5; or BUYER may void Contract by notifying SELLER, in writing, on the Tallahassee
178       Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing of the Termination Form.

179 **12. INSPECTIONS; CONDITION OF PROPERTY: BUYER ACKNOWLEDGES THAT BUYER HAS NOT RELIED UPON ANY**
180   **REPRESENTATION MADE BY BROKER(S) AS TO THE CONDITION OF THE PROPERTY.**
181   SELLER acknowledges that any known facts concerning the condition of the Property have been disclosed to the BUYER and
182   Brokers. **SELLER agrees to provide access and all utilities for BUYER'S inspections. BUYER shall be responsible for cost of all**
183   **inspections, except for WDO inspection which shall be paid by the Party stipulated in Clause 5.** Buyer acknowledges that some
184   home improvements require permits from government entities, and failure to obtain required permits may result in assessments
185   or liens against the property. Buyer is not relying on any statements by Brokers regarding permits or previous improvements to
186   the property. If BUYER fails to make inspections, or deliver timely written notice within 15 days of Contract Date as stipulated
187   below BUYER waives all rights to do so and agrees to accept the Property in its current condition, except that SELLER is required
188   to maintain Property in the same condition as at time of Contract . At time of Closing, SELLER will assign all assignable repair and
189   treatment contracts to the BUYER, with BUYER paying any applicable transfer fees. SELLER will also provide BUYER with all keys,
190   garage door opener transmitters and access codes and provide BUYER with copies of invoices for all repairs made to Property by
191   third party persons within 90 days prior to closing date.

Initials: _____  _____
                                    _____  _____

192  **BUYER WILL PROVIDE SELLER WITH COMPLETE COPIES OF ALL INSPECTION REPORTS WITHIN 15 DAYS OF CONTRACT**
193  **DATE IF CONTRACT IS TERMINATED FOR ANY REASON.**

194  A.  ☐ Within 15 days of Contract Date BUYER may have the Property inspected by state or county licensed person(s) dealing in repair,
195     construction, radon testing or home inspection, to determine if there are defects. At any time within the 15 days BUYER may terminate
196     Contract by notifying SELLER, in writing, that inspection(s) are not satisfactory to BUYER. Notification will be made on the Tallahassee
197     Board of Realtors Termination Form and SELLER will receive a refund of Deposit upon signing of the Termination Form.

198  Should BUYER wish to proceed with the sale:

199     1.  **WARRANTED ITEMS:** SELLER will have warranted items in proper working condition on the day of Closing or possession,
200        whichever occurs first. Warranted items are the **heating, cooling, electrical, plumbing, appliances, well, septic tank and**
201        **systems, sprinkler system, owned or leased security system, pool and spa.** SELLER is not obligated to bring any item into
202        compliance with current building code or regulations unless necessary to repair a warranted item. SELLER is not required to
203        repair cosmetic conditions. "Proper working condition" means operating in the manner in which the item was designed to
204        operate and "cosmetic condition" means aesthetic imperfections that do not affect the working condition of the item.

205     2.  **NON-WARRANTED ITEMS:** (All items other than those addressed in Clauses #11 and #12.A.1 above). In the event there are
206        defects in non-warranted items, BUYER shall have the option to accept the item in its current condition or make a request
207        of SELLER for repairs and/or remedies.

208  Notification of repairs required for warranted items and requests for repairs and/or remedies of non-warranted items shall be made
209  on the Tallahassee Board of Realtors Inspection Addendum and **COMPLETE COPIES OF ALL INSPECTION REPORTS** shall be attached.
210  SELLER may then agree to BUYER'S request, respond as to what non-warranted repairs and/or remedies SELLER is willing to make
211  or reject BUYER'S request for repairs and/or remedies of non-warranted items in which case BUYER may make another request or
212  terminate the Contract and receive a refund of Deposit. Negotiation of non-warranted repairs and/or remedies between BUYER
213  and SELLER will continue until either an agreement is reached or either BUYER or SELLER may terminate the Contract in which case
214  BUYER will receive a refund of Deposit. All responses shall be made on the Tallahassee Board of Realtors Inspection Addendum,
215  other than termination, which shall be on the Tallahassee Board of Realtors Termination Form, and each Party will have 5 days to
216  respond to the other Party's last request. **Should either Party fail to make a written response within the time frame called for,**
217  **that Party will be deemed to have agreed to the other Party's last request.**

218  B.  ☐ BUYER agrees to accept the Property in its present "as is" condition.

219     1.  ☐ Within 15 days from Contract Date, BUYER may have Property inspected by state or county licensed person(s) dealing in
220        repair, construction, radon testing, WDO inspection or home inspection to determine if there are any defects. At any time
221        within the 15 days BUYER may terminate Contract by notifying SELLER, in writing, that inspection(s) are not satisfactory to
222        BUYER. Notification will be made on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund
223        of Deposit upon signing of the Termination Form.

224        SELLER ☐ will not do WDO repairs and/or treatment.

225        SELLER ☐ will do WDO repairs and/or treatment pursuant to the terms of Clause #11.

226     2.  ☐ BUYER acknowledges that BUYER has inspected the Property prior to signing this Contract and waives the right to do
227        further inspections, including WDO inspection.

228  In either 'A' or 'B' above BUYER reserves the right to do a final walk through prior to Closing or possession, whichever occurs first,
229  to verify SELLER has made any required repairs and met the maintenance requirement pursuant to Clause13. If BUYER fails to do
230  the final walk through, or notify the SELLER in writing of any items not repaired or maintained as required, BUYER will accept the
231  Property in current condition. Should sale not close, BUYER will repair all damage to the Property resulting from inspections and
232  return the Property to its pre-inspection condition (with the exception of any damages from the WDO inspection).

233  **13. MAINTENANCE:**
234     SELLER shall maintain Property, including items repaired/remedied, lawn, shrubbery, pool, any other improvements, until BUYER'S
235     Closing or possession, whichever occurs first, in the same condition as at time of Contract, ordinary wear and tear excepted.

236  **14. RISK OF LOSS:**
237     The risk of loss or damage to the Property is assumed by SELLER until Closing. If Property is damaged in excess of 3% of purchase price,
238     BUYER may have the option to void this Contract and receive a refund of Deposit. If Property is damaged up to and including 3% of the
239     purchase price, SELLER will have 15 days to restore Property to original condition as of Contract Date and proceed to Closing. If the 15
240     day period extends past the Closing Date, Closing may be extended up to 15 days past the agreed upon Closing Date. SELLER will notify
241     BUYER, in writing, if Property cannot be restored within 15 days. BUYER may then void Contract by notifying SELLER, in writing, on the
242     Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing of the Termination Form.

Initials: _____  _____

**15. EVIDENCE OF TITLE; RESTRICTIONS; EASEMENTS:**
Closing will take place in the county where Property is located unless otherwise agreed to in writing by all Parties. Closing must be able to be conducted by mail or electronic means. Pursuant to Clause #5, Party ordering title insurance shall order from a Florida licensed title insurer, for delivery to the proposed title insured, a title binder to be followed by a title insurance policy upon recording of conveyance. The policy(s) will insure the title to the real Property, subject only to liens, encumbrances, exceptions or qualifications set forth in this Contract and those which shall be discharged at or before Closing. If a defect in title is discovered, SELLER will have 15 days from receipt of notice of said defect within which to clear the defect at SELLER's expense. If any such title defect cannot be cured within the 15 days, BUYER may accept the title as is or BUYER may void the Contract by notifying SELLER, in writing on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit. **BUYER IS ADVISED TO HAVE OWNER'S TITLE INSURANCE ON ALL TRANSACTIONS.** Title to the real Property shall be conveyed by warranty deed unless otherwise agreed in writing. SELLER represents that SELLER has legal authority and capacity to convey title to the Property with all improvements. SELLER shall furnish to BUYER a SELLER'S lien affidavit that there have been no improvements to subject Property for 90 days preceding Closing Date for which a lien could be filed. If the Property has been repaired within 90 days preceding Closing Date, the SELLER shall deliver SELLER'S lien affidavit indicating payment of all sums owed. If closing company charges for preparation of deed and/or lien affidavit, cost of preparation shall be paid for by Party choosing closing company. BUYER will take title to the Property subject to any assumed mortgage(s), purchase money mortgage(s), taxes for the current and subsequent years, special assessments and those accruing hereafter, zoning and other governmental restrictions, plat restrictions and qualifications, public utility easements, and restrictive covenants of record.

**16. PRORATIONS:**
All taxes and assessments imposed by a Community Development District (CDD) for the current year, rents, interest and other income and expenses of the Property and homeowner's association dues shall be prorated as of Closing. As to prorations, the day of Closing shall belong to BUYER. If information as to current year's taxes is not available at the time of Closing, taxes shall be prorated on the basis of the prior year's gross taxes with regard to applicable exemptions, provided the proration shall be adjusted at the request of either Party when the tax bill for the year of Closing becomes available. All prorations shall be adjustments to the year the cash due at Closing.

**17. SPECIAL ASSESSMENT LIENS:**
Special assessment liens as of Closing are to be paid by SELLER. Pending assessment(s) as of Closing will be assumed by BUYER, provided, however, that where the improvement has been substantially completed as of Contract Date, such pending assessment(s) shall be considered a lien and SELLER will be charged at Closing an amount equal to the last estimate of the improvement assessment. Any pending assessment lien not disclosed to BUYER in writing prior to final signing of Contract will permit BUYER to void this Contract and receive a refund of Deposit, unless paid by SELLER prior to or at time of Closing.

**18. ☐ LEASED PROPERTY:**
SELLER will furnish to BUYER copies of all written leases or estoppel letters from any persons without written occupancy agreements, within 5 days from Contract Date. Estoppel letters will specify the nature and duration of occupancy and verify all rents and rental deposit monies. If leases or estoppel letters are not received, or are unacceptable, BUYER may, within 15 days from Contract Date, void Contract by notifying SELLER, in writing on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit upon signing Termination Form. All rental deposits and advance rents will be transferred to BUYER at Closing.

**19. BUYER'S DISCLOSURES:**
THE FOLLOWING DISCLOSURES MAY CONTAIN CONTINGENCIES. IF A CONTINGENCY HAS NOT BEEN SATISFIED PURSUANT TO THE TERMS OF THE CONTRACT, BUYER MAY TERMINATE THE CONTRACT WITHIN THE TIME FRAME SPECIFIED, IN WRITING, ON THE TALLAHASSEE BOARD OF REALTORS TERMINATION FORM AND RECEIVE A REFUND OF DEPOSIT UPON SIGNING OF TERMINATION FORM. IF BUYER DOES NOT REPORT OTHERWISE, IN WRITING, TO THE SELLER WITHIN THE REQUIRED TIME, CONTINGENCY SHALL BE DEEMED WAIVED AND BUYER SHALL PROCEED TO CLOSING.

A. **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over a period of time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department. (Chapter 404.056(8), F.S.)

B. **BUILDING ENERGY EFFICIENCY:** BUYER may have the energy efficiency of the building they are purchasing determined pursuant to Chapter 553.996, F.S. BUYER acknowledges receipt of the Florida Building Energy-Efficiency Rating System Information Brochure.

C. **PROPERTY TAXES:** BUYER should not rely on SELLER'S current property taxes as the amount of property taxes that BUYER may be obligated to pay in the year subsequent to purchase. A change of ownership or property improvements triggers reassessments of a property that could result in higher property taxes. If you have questions concerning valuation, contact the county Property Appraiser's office where the Property is located or see www.myflorida.com/dor/property/appraiser.html .

6 of 9                    Initials: _____  _____

D. **ROAD AND DRAINAGE FACILITY MAINTENANCE:** BUYER may be responsible for the maintenance of roads and related drainage, if any, serving this Property, and unless there is an ownership interest in such roads and related drainage by governmental authorities, said governmental authority shall have no responsibility for such maintenance. If the Property is served by street(s) and street related drainage facility(ies) which are not dedicated to the public as determined exclusively by buyer prior to signing the contract for sale and purchase, the following shall apply if checked:

☒ **PRIVATE STREET AND DRAINAGE CERTIFICATION:** I hereby acknowledge that I am purchasing the Property referenced above and I understand that the City and/or County is not responsible for street or drainage maintenance, and that I may be responsible for such maintenance of all street(s) which this Property abuts.

E. **LAND USE DISCLAIMER:** Land use regulations are unpredictable and constantly changing. The Property is subject to a Comprehensive Land Use Plan for the jurisdiction in which it is located. The use of the Property may also be affected by restrictive covenants, easements, zoning restrictions, or other land use restrictions. BUYER is also advised that if the Property lies within the boundary of a municipality, it may be subject to land use restrictions of both the municipality and the County. BUYER should contact the appropriate government agencies to determine how the use of the Property is affected by the Comprehensive Land Use Plan and zoning restrictions. This Contract is not contingent upon any land use issue, unless Tallahassee Board of Realtors Special Clause Addendum, Clause #7 is made a provision of this Contract. BUYER accepts the Property subject to all current covenants, restrictions, and easements of record, and government land use regulations, unless specifically stated otherwise in this Contract.

SELLER, BROKER, and SALES ASSOCIATES make no representations regarding whether the Property is suitable for Buyer's intended use of the Property. SELLER, BROKER, and SALES ASSOCIATES disclaim any liability regarding covenants, restrictions, and easements of record, and government land use regulations. BUYER releases SELLER, BROKER and SALES ASSOCIATES from any liability regarding statements or representations regarding covenants, restrictions, and easements of record, government land use regulations, or any other statements or representations regarding the use or potential use of the Property.

F. **SCHOOL ZONES:** BUYER is advised to verify schools zones and possible school and grade level caps through the local school board. For the Leon County School Board see www.info.leon.k12.fl.us/zones/by_address/Default.asp or call 850-487-7257. For other counties see www.fldoe.org/schoolmap/flash/regionalmap.asp?bhcp=1

G. **SQUARE FOOTAGE:** BUYER acknowledges they have not relied upon BROKER'S or SELLER'S estimate of square footage of Property. Square footage is approximate and may have been provided by third party sources. If square footage is of concern to BUYER, BUYER is advised to personally measure the Property.

H. **SEWER; SEPTIC TANKS:** It is the responsibility of BUYER to contact the appropriate utility department to determine if a sewer is currently in use. If the Property is on a septic tank system, it is the responsibility of BUYER to contact the local health department regarding the continued use of that system.

I. **INSPECTIONS:** BUYER is strongly advised to obtain property and whole house inspection(s) as provided for in the Contract for Sale and Purchase. BUYER should select professionals with appropriate qualifications to conduct inspections. BUYER is advised that some properties may have materials (such as, but not limited to, Louisiana Pacific and Synthetic Stucco) that have failed the manufacturer's warranties and/or have been known to have defects, and that inspection is one way to identify this and determine the condition of these materials. BUYER is aware that BROKERS and their SALES ASSOCIATES do not guarantee or warrant the condition of the Property and are in no way responsible for the condition of the Property.

J. **SELLER'S PROPERTY DISCLOSURE; HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE:**
IF THE DISCLOSURE SUMMARY REQUIRED BY FLORIDA STATUTES HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE SIGNING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

☐ BUYER has been provided with a copy of the Homeowners' Association/Community Disclosure prior to Contract.

☐ BUYER has been provided with a copy of the SELLER's Property Disclosure containing the Homeowners' Association/ Community Disclosure prior to Contract.

☒ This Contract is contingent upon SELLER completing and providing to BUYER, within 5 days of Contract Date, the Tallahassee Board of Realtors SELLER'S Property Disclosure containing the Homeowner's Association/Community Disclosure. The BUYER has 3 days after receipt to review and find it acceptable.

K. **RESTRICTIVE COVENANTS:**
BUYER should contact applicable Homeowner's Association (If any) with any questions concerning the Property use and/or restrictions and assessments. It is the responsibility of the BUYER to obtain and read any applicable Covenants and Restrictions and to make sure the documents are complete and current.

☒ This Contract is contingent upon BUYER obtaining Restrictive Covenants within 5 days of Contract Date and finding them satisfactory.

Initials: _____  _____

349  L. **BUILDER'S WARRANTY (NEW CONSTRUCTION ONLY):**
350  ☐ BUYER has been provided a copy of the SELLER's written warranty and accepts it.
351  ☐ This Contract is contingent upon SELLER providing to BUYER, within 5 days of Contract Date by all Parties, any written warranty
352  provided by the SELLER. The BUYER has 3 days after receipt to review and find it acceptable.
353  ☐ BUYER has been advised there is no written warranty.

354  **20. FAILURE OF PERFORMANCE:**
355  A) If BUYER fails to perform this Contract within the time specified (including payment of all Deposits) the Deposit paid by BUYER
356  may be retained by or for the account of SELLER as agreed upon liquidated damages, consideration for the signing of this Contract
357  and in full settlement of any claims; whereupon BUYER and SELLER shall be relieved of all obligations under Contract; **OR** SELLER at
358  SELLER'S option, may proceed to enforce SELLER'S rights by seeking specific performance.  B) If for any reason other than failure of
359  SELLER to make SELLER'S title marketable after diligent effort, SELLER fails, neglects or refuses to perform this Contract, the BUYER
360  may seek specific performance or elect to receive the return of BUYER'S Deposit(s) without thereby waiving any action for damages
361  resulting from SELLER'S breach.

362  **21. ATTORNEY FEES AND COSTS:**
363  In connection with any litigation, including appeals, arising out of this Contract, the prevailing Party shall be entitled to recover
364  all costs incurred, including reasonable attorney fees. Escrow Agent may, at Agent's option, continue to hold the subject matter of
365  the escrow until the parties agree to its disbursement or Escrow Agent may deposit same with the clerk of the circuit court having
366  jurisdiction of the dispute. If Escrow Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and
367  costs from the Deposit and will recover reasonable attorneys fees and costs to be paid from the escrowed funds or equivalent and
368  charged and awarded as court costs in favor of the prevailing Party.

369  **22. ADDENDUM** attached, which upon signing by both Parties are made a part of this Contract for Sale and Purchase:
370  ☒ Tallahassee Board of Realtor's Special Clause Addendum
371  ☐ Insulation Rider (new residence only)
372  ☐ Lead Base Paint Disclosure (if built prior to 1978)
373  ☐ FHA Inspection Rider
374  ☐ Condominium Riders
375  ☐ #_____  Additional Riders described as follows:

376  _____

377  _____

378  **23. SPECIAL CLAUSES:**

Insert
Clause

380  _____
381  _____
382  _____
383  _____
384  _____
385  _____
386  _____
387  _____
388  _____
389  _____
390  _____
391  _____

8 of 9                          Initials: _____  _____

**24. WRITTEN; FAX; E-MAIL; OTHER AGREEMENTS; MODIFICATIONS:**

Upon signature by all Parties, this Contract constitutes the entire agreement between the Parties and no other agreement exists except those in writing, signed and dated by all Parties. Written provisions inserted in this Contract, or amended by attached addenda, will control all printed provisions in conflict. The placement of "x" or "✓" within a box shall make the provision applicable. Any written notifications not delivered in time frames specified shall be deemed waived and Parties shall proceed to closing. If communication is transmitted by FAX or e-mail, signing will be considered binding by Parties for the purpose of this Contract, any addenda, and any future addenda to this Contract.

**25. TIME FOR ACCEPTANCE; CONTRACT DATE:**

If this Contract For Sale and Purchase is not executed by SELLER and BUYER prior to (date) ___September 13, 2011___, at __5__ : __00__ ☐ am ☒ pm, the Deposit will be returned to BUYER and this offer will be null and void. The Contract Date will be the date when the last Party dated and signed the offer or final counter offer.

**26. TIME IS OF THE ESSENCE IN THIS AGREEMENT.**

ALL REFERENCES TO TIME FRAMES SHALL BE CALENDAR DAYS INCLUDING WEEKENDS AND HOLIDAYS AND IN THE TIME ZONE WHERE PROPERTY IS LOCATED.

**27. THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT FULLY UNDERSTAND IT, SEEK THE ADVICE OF A REAL ESTATE ATTORNEY PRIOR TO SIGNING. THIS CONTRACT SHALL NOT BE RECORDED.**

**28.**

| | |
|---|---|
| BUYER | DATE   9.12.11 |
| BUYER | DATE   9.12.11 |

---

**29. SELLER'S RESPONSE SECTION**

☐ SELLER accepts offer as presented.

☐ SELLER counters BUYER'S offer (see separate COUNTER OFFER FORM. If a COUNTER OFFER FORM is fully executed by BUYER and SELLER it becomes a part of this Contract For Sale and Purchase).

| | |
|---|---|
| SELLER | DATE |
| SELLER | DATE |

☐ SELLER rejects offer. (Seller should initial and date for rejection)

---

| | | |
|---|---|---|
| Lisa Y. Montgomery-Calvert | LisaMCalvert@comcast.net | 850-556-1226 |
| SELLING SALES ASSOCIATE (PRINT NAME) | EMAIL | PHONE |
| Montgomery Realty Inc. | | September 12, 2011 |
| COMPANY (PRINT NAME) | | DATE |
| Gary Bartlett | | |
| LISTING SALES ASSOCIATE (PRINT NAME) | EMAIL | PHONE |
| Gary Bartlett Real Estate | | |
| COMPANY (PRINT NAME) | | DATE |

9 of 9

©1997, Tallahassee Board of REALTORS®, Inc. Rev. 01-11 [20]



TALLAHASSEE BOARD OF REALTORS®, INC.

# SPECIAL CLAUSE ADDENDUM

(REVISED SEPTEMBER 2009)



**SELLER**: _____ **T & D Enterprises** _____

**BUYER**: _____ **Christopher D. Calvert and Lisa Y. Montgomery-Calvert** _____

**PROPERTY**: _____ **Lot 9 Tuscan Hill Drive, Tallahassee, Fl. 32312** _____

Any of the following clauses checked will become a part of the Contract For Sale and Purchase referenced above. Any costs associated with the contingencies below will be paid by BUYER unless otherwise indicated in the Contract For Sale and Purchase. If any of the contingencies can not be met within the time frame specified, BUYER may terminate the Contract by notifying SELLER, in writing, on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit. Any written notifications not delivered in time frames specified will be deemed waived and parties will proceed to Closing.

1. ☐ **PRE-QUALIFICATION VERIFICATION:** Within_____ days from Contract Date, BUYER will provide to SELLER a letter from lender stating that based on a review of BUYER'S written application and credit report, BUYER is pre-qualified for the new loan indicated in the Contract for Sale and Purchase. If BUYER fails to provide such letter within said time, SELLER may terminate this Contract in writing on the Tallahassee Board of Realtors Termination Form.

2. ☐ **SELLER FINANCING:**
Within 5 days after Contract Date, BUYER will submit a completed loan application on the FNMA/FHLMC Uniform Residential Loan Application form and will provide a copy of the BUYER'S credit report that has been obtained from a credit reporting agency in the last thirty days. SELLER will have 5 days to respond or request additional supporting documentation. BUYER will provide any pertinent supporting documentation requested by the SELLER within 5 days of the SELLER'S written request. SELLER will have a final 5 days to determine if application and /or documentation are satisfactory. SELLER may terminate Contract by notifying BUYER, in writing, on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit.

3. ☐ **CONTINGENT UPON SALE OF BUYER'S PROPERTY:**
Contract is contingent upon the sale of BUYER'S property located at _____
on or before _____ with Closing to be on or before _____
or this Contract is terminated and the Deposit will be returned to BUYER. If BUYER'S property is not currently listed in a Multiple Listing System local in nature to the property, BUYER agrees to place property in such system with _____ days of acceptance of this Contract.

If the FIRST RIGHT OF REFUSAL clause below is also checked, the first right of refusal provision will be eliminated upon BUYER notifying SELLER, in writing, that the BUYER has accepted a Contract on BUYER'S property that is not contingent upon another property selling. This Contract will continue to be contingent upon the successful closing of the BUYER'S property by the date stipulated above.

4. ☐ **FIRST RIGHT OF REFUSAL:**
SELLER has the right to continue to market the Property. Should SELLER accept another written offer, SELLER will deliver to BUYER a written request for removal of contingency. If BUYER cannot give written removal of contingency regarding sale of the BUYER'S property within 48 hours of delivery of SELLER'S written notification, this Contract will terminate and Deposit will be returned to BUYER. If BUYER does give written removal of said contingency, BUYER will provide documentation within the same time period verifying BUYER'S ability to close without having sold property referenced above. BUYER will then proceed to Closing according to the terms of the Contract For Sale and Purchase except that BUYER'S purchase will not be contingent upon obtaining financing.

1 of 2                                        Initials: _____  _____

5. ☐ **CONTINGENT UPON CLOSING OF BUYER'S PROPERTY:**
This Contract is contingent upon the closing of BUYER'S property, which is currently under contract, located at
_____ on or before _____
or this Contract terminates and Deposit will be returned to BUYER.

6. ☐ **BACK UP CONTRACT:**
BUYER acknowledges that SELLER has entered into one or more Contracts on this Property prior to the execution of this Contract. This Contract will be in position number _____ subject to the rights of the parties of the other contract(s). Should the primary Contract(s) terminate, written notice will be delivered to the BUYER within 24 hours of primary Contract(s) termination and this Contract will become the primary and all parties will proceed to Closing subject to the terms and condition of the Contract For Sale and Purchase. The Contract Date will be deemed to be the date notice is delivered to BUYER that BUYER'S Contract has become the primary Contract. At any time prior to BUYER receiving notice that BUYER has moved into primary position, BUYER may terminate this Contract by delivering written notice to the SELLER on the Tallahassee Board of Realtors Termination Form and BUYER will receive a refund of Deposit.

7. ☒ **LAND AND PROPERTY USE:** BUYER will have ___**10**___ days from Contract Date to:

   ☒ Have a site evaluation conducted that is acceptable to BUYER.

   ☒ Have soil tests conducted that are acceptable to BUYER.

   ☒ Verify permitting is possible to obtain. It will be the responsibility of BUYER to investigate any permitting that may be required for BUYER'S intended use of the Property.

   ☒ Secure verification that water and sewer or septic system are available and acceptable to BUYER.

   ☐ Verify there are no governmental laws, codes, ordinances or restrictions, any neighborhood restrictive covenants, and zoning or other land use restrictions impairing BUYER'S intended use of the Property for _____
   _____.

8. ☐ **TAX DEFERRED (1031) EXCHANGE:**
If either SELLER or BUYER wishes to enter into a like-kind exchange under Section 1031 of the Internal Revenue Code ("Exchange"), the other party will cooperate in all reasonable respects to effectuate the Exchange including executing documents; provided, however, that the cooperating party will incur no liability or cost related to the Exchange and that the Closing will not be contingent upon, extended or delayed by the Exchange.

9. ☐ **OTHER:**
_____
_____
_____
_____

10. ☒ **LICENSED REAL ESTATE SALES ASSOCIATE:**
All parties to this Contract are advised that _____**Lisa Y. Montgomery-Calvert**_____
is a licensed real estate sales associate or broker and is buying/selling this Property for his/her own use.

| | |
|---|---|
| _~~signature~~_  9.12.11 | |
| BUYER                        Date | SELLER                        Date |
| _~~signature~~_  9.12.11 | |
| BUYER                        Date | SELLER                        Date |

2 of 2

©2006, Tallahassee Board of REALTORS®, Inc. Rev. 09-09 [23]

## EXHIBIT "B"
## SERVICE LIST

James M. Donohue, jdonohus@ausley.com
Attorney for Capital City Bank

Jason H. Egan, Jason.h.egan@usdoj.gov
Office of the U.S. Trustee

Brian G. Rich, brich@bergersingerman.com
Counsel for Debtor

Robert A. Soriano, sorianor@gtlaw.com
Counsel for Branch Banking and Trust Company

J. Ellsworth Summers, Jr., jes@rtlaw.com
Counsel for Ameris Bank

Ethan Andrew Way
ethan@waylawfirm.com
Counsel for Farmers & Merchants Bank

Keith L. Bell, Jr.
kbell@cphlaw.com
Counsel for Beach Community Bank

Albert C. Penson, Esq.
acp@pendd.com
Counsel for David Quadagno

Lee M Nunn
1288 FERNHILL COURT
TALLAHASSEE, FL. 32312

REGIONS BANK
1900 FIFTH AVENUE NORTH, RC-9TH FLOOR
BIRMINGHAM, ALABAMA 35203

PEOPLES NATIONAL BANK
1020 JOHN SIMS PARKWAY
NICEVILLE, FL 32578

BEACH COMMUNITY BANK
17 EGLIN PARKWAY SE
FT. WALTON BEACH, FL 32548

Christopher D. Calvert & Lisa Y. Montgomery-Calvert
lisamcalvert@comcast.net and

c/o Gary Bartlett
Gary Bartlett Real Estate
2940 E. Park Avenue,
Tallahassee, Florida 32301

**EXHIBIT "C"**